UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHANDRA CARTER o/b/o/ E.K.W. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW M. SAUL[1], )<br>Commissioner of Social Security )<br>Administration, )<br>)<br>Defendant. ) | Case No. 4:18CV1748 HEA |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) denying E.K.W.'s ( a minor child) application for Supplemental Security Income (SSI) under Title XVI of the Act. Chandra Carter is pursuing this matter on behalf of the minor and pursuant to § 405(g) of Title II of the Social Security Act (Act), 42 U.S.C. §§ 1381, *et seq*. The Court has reviewed the briefs filed by the parties and the entire administrative record, including the transcript and medical evidence. For the reasons set forth below, the denial of E.K.W's application will be affirmed.

---

[1] The Court takes judicial notice that on June 4, 2019, Andrew M. Saul was confirmed as Commissioner of Social Security. *See* https://www.congress.gov/nomination/116th-congress/94. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul is substituted for Nancy A. Berryhill as defendant in this action. No further action needs to be taken to continue this suit by reason of 42 U.S.C. § 405(g) (last sentence).

## Facts and Background

Plaintiff filed an application for children's SSI on behalf of her minor son E.K.W. on December 18, 2015, alleging a disability onset date of December 1, 2015. The application was initially denied on February 25, 2016. Plaintiff requested a hearing before an Administrative Law Judge (ALJ) on May 12, 2016.

On November 30, 2017, a hearing was held. Plaintiff waived her right to counsel. Following the hearing, the ALJ issued a decision on February 13, 2018 finding that plaintiff was not disabled under the Act. Plaintiff filed a Request for Review of Hearing Decision/Order and on September 13, 2018, the Appeals Council denied her request for review. The decision of the ALJ stands as the final decision of the Commissioner.

<u>Record Evidence and Testimony</u>

On January 10, 2015, E.K.W. presented to People's Health Centers for a well child exam. This was his first visit to People's Health Centers. He was examined by Dr. Sarah Bryant. Plaintiff reported to Dr. Bryant that she was concerned about E.K.W.'s behavior and activity, and that E.K.W. was very active "all the time." Dr. Bryant discussed behavioral interventions with Plaintiff and referred her to a child psychologist to discuss behavior plans. Dr. Bryant noted that E.K.W. exhibited age-appropriate behavior. E.K.W. "passed" all 4-year-old developmental milestones, except for drawing people, which he "failed," and

playing well with others, which he did "sometimes." E.K.W.'s grade level was pre-school; he was noted as performing at grade level and not having a learning disability.

On November 24, 2015, E.K.W. presented to People's Health Centers for a well child checkup and behavior. Again, he was examined by Dr. Bryant, who noted that E.K.W. exhibited age-appropriate behavior and that all areas of development were appropriate for his age. E.K.W. was attending full day kindergarten, performing at grade level, and did not have a learning disability; he also reported being suspended or expelled. Plaintiff reported to Dr. Bryant that E.K.W.'s behavior was a big problem in that E.K.W. was very hyperactive, was running around all the time, and had been getting aggressive with his teachers. Plaintiff stated that E.K.W. exhibited similar behavior at home, though not as bad. Plaintiff also reported that E.K.W. had similar behavioral problems in pre-K. She reported that he hadn't been doing anything "out of the ordinary" or "aggressive" at home until that year, although he would get into fights with his cousins. Dr. Bryant noted that no IEP evaluation had been done, and that Plaintiff was interested in in-home therapy services. Dr. Bryant's patient plan for E.K.W. included completion of "Vanderbilts," (presumably the ADHD Diagnostic Rating Scales for parents and teachers, *see, e.g.* Mark L. Wolraich et al., *Psychometric Properties of the Vanderbilt ADHD Diagnostic Parent Rating Scale in a Referred*

*Population*, J. OF PEDIATRIC PSYCHOL., Volume 28, Issue 8, December 2003, 559–568, *available at* https://doi.org/10.1093/jpepsy/jsg046) and returning for a follow-up.  She also noted that she should would refer to Epworth.

On December 15, 2015, E.K.W. presented to People's Health Centers for ADD/ADHD and was examined by Dr. Janelle Spaulding.  During the exam, E.K.W. was oriented to time, place, person, and situation and exhibited age-appropriate behavior.  E.K.W. was attending full day kindergarten, was performing at grade level, and did not have a learning disability.  All areas of development were noted as appropriate for E.K.W.'s age.  Plaintiff reported to Dr. Spaulding that E.K.W. had behavior problems at home and school that had persisted for more than six months.  Plaintiff reported continuing issues at school, including E.K.W.'s one-day suspension the week prior, and noted that E.K.W. was pending IEP.  Dr. Spaulding noted that the Vanderbilt scales had been completed by a parent and by a teacher.  Spaulding assessed E.K.W. as having ADHD predominantly hyperactive type, and started E.K.W. on Adderall XR 5 mg.  E.K.W. was to follow up in one month and pursue a behavioral therapist.

In the initial Disability Report (Form SSA-3820) dated December 29, 2015, Plaintiff listed People's Health Centers as E.K.W.'s only medical provider and noted that E.K.W.'s first visit to People's Health Centers was in August 2015.

Plaintiff also reported that E.K.W. was a Kindergartener at Jamaa Learning Center beginning in August 2015 and listed no other educational history.

On January 4, 2016, the Office of Special Education for St. Louis Public Schools responded to an SSA request for information, stating that it "[could] not locate information indicating that [E.K.W.] received special education services."

The record contains a February 2, 2016 letter from Epworth Family Support Network which indicates that E.K.W. was being seen by a family therapist but contains no information about assessment or treatment. A February 2, 2016 Authorization for Release of Information between Epworth and Jessica Arteaga of Grace Hill Home-Based Head Start Family Education is also present in the record.

On February 11, 2016, E.K.W.'s teacher at Jamaa Learning Center, Megan Willard, wrote about her observations of E.K.W. after being on ADHD medication. Willard wrote that she saw a great difference in him, with E.K.W.'s ability to focus his attention improving to all day instead of just moments throughout the day. He had also calmed down and spoke in a more understanding and respectable way. Willard noted that E.K.W. was, however, sleeping more often in class and complaining that he did not feel well, which could take up a half to full day of learning. Willard also wrote that on days that E.K.W. said he did not feel well and thus did not take his medication, his behavior was uncontrollable because he could not control his hyperactive body and mind and spoke about unrealistic situations.

On February 25, 2016, Linda Skolnick, a state psychological consultant, submitted a Disability Determination Explanation in E.K.W.'s case. Dr. Skolnick opined that E.K.W.'s impairment of ADHD was severe, but did not meet, medically equal, or functionally equal the SSA listings. Dr. Skolnick found that E.K.W had some limitations in attending and completing tasks and in interacting and relating with others, but that these limitations were less than marked. Dr. Skolnick noted that E.K.W.'s medical providers reported that he performed at grade level in a regular educational setting and exhibited age-appropriate behavior at medical exams. She also noted that E.K.W. had recently started ADHD medications, and noted Plaintiff's reports that E.K.W. was active, had behavioral problems at home and school, and sometimes fought his cousins.

In the Disability Report – Appeal (Form SSA-3441) dated May 13, 2016, Plaintiff wrote that E.K.W.'s medical condition changed in January 2016 in that she "[has] to go to the school every day. [E.K.W.] hit the teacher. He run[s] out of the classroom. He can't stay focused. He hit[s] kids. He doesn't follow directions. He gets angry and tears up things." She also noted that "[E.K.W.] is very aggressive. He is angry. We don't know what is wrong with him. When we try to talk to him he just cry. He has always been like that, but it has gotten worse." On the appeal form, Plaintiff indicated that E.K.W. had received more medical care since the initial application – People's Health Centers was still listed as the only

medical provider. Plaintiff also listed Head Start – Grace Hill as an entity with medical information about E.K.W., noting that "Jessica came to the house for an hour two times a week to do activities with him." Plaintiff again listed Jamaa Learning Center as E.K.W.'s school. She wrote that E.K.W. was currently on Adderall for ADHD, prescribed by the People's Health Centers, and that the Adderall sometimes had the side effect of making E.K.W. hyper. As to his daily activities, Plaintiff wrote that E.K.W. was very hyper and started wetting the bed.

The record contains four "Work Charts" from E.K.W.'s school dating from August and September 2017. The charts show that for the four weeks recorded, E.K.W. received mostly frowning-face marks and neutral-face marks for the categories of "Stayed in seat when appropriate," "Raised hand to speak," "Talked at appropriate times," "Stayed on task to complete work," and "Followed directions." E.K.W. did receive some smiling-faces over the course of the four weeks. On the first chart, E.K.W.'s teacher wrote that on August 29, 2017, E.K.W. was talking and playing too much in class and would not sit still for instructions. On August 31, the teacher wrote that E.K.W. was still having difficulty staying focused, sitting still, and trying to complete work. On September 1, she wrote that E.K.W. stayed in his seat but was not completing his work. On the second chart, dated September 11, the teacher wrote, "[E.K.W.] is still having difficulties staying focused in class and completing his work." On the third chart, the teacher wrote,

"[E.K.W.] is having difficulties sitting still and follow[ing] directions and completing his work." The fourth chart contains no written remarks.

At the time of the hearing on November 30, 2017, E.K.W. was seven years old and in second grade. At the hearing, E.K.W. said that he did not know what grades he was making in school. He stated that he loved math and didn't like doing science. E.K.W. said he had friends at school. He stated that he took medication before school and that the medication helped him pay attention and stay focused in school. E.K.W. stated that he listened to his teachers in school; he also stated that he did not behave in school.

At the hearing, Plaintiff testified that E.K.W. had been on 15 milligrams of ADHD medication since approximately 2016. Prior to that, he took 5 milligrams and then 10 milligrams. Plaintiff thought E.K.W.'s medication helped him stay focused in school but noted that E.K.W.'s teachers believed the medication wore off during lunchtime. Plaintiff stated that E.K.W.'s teacher reported having no problems with E.K.W. when he was on his medicine in the morning. The teacher also told Plaintiff that after lunch, E.K.W. would start acting out, not completing his work, not sitting down, and talking a lot. Plaintiff told the ALJ that she was taking E.K.W. to the doctor to address this issue the next day. The ALJ asked if Plaintiff was going to talk to the doctor about seeing what E.K.W. takes so that his concentration and behavior would be constant throughout the day; Plaintiff said

yes.  The ALJ asked Plaintiff if there was anything else she wanted to tell him; Plaintiff declined.

E.K.W.'s St. Louis Public Schools progress report for Second Grade, Quarter 1 (Fall 2017) shows that E.K.W. received marks for "Satisfactory Progress" in Science, Social Studies, Art, and Physical Education & Health.  He received marks for "Needs Additional Support" in Language, Reading, and Math.

On April 2, 2018, Dr. Gita Malur from the People's Health Centers examined E.K.W. and prepared a Medical Examination Report for his school.  The report listed "ADHD – predominantly hyperactive type" as E.K.W.'s medical condition and medications as Adderall XR 15 milligrams in the A.M. daily and Adderall 5 milligrams around 3 P.M. daily.  Dr. Malur also wrote a letter requesting that the recipient of the letter provide E.K.W. with "all extra resources to help him with learning."

**Statement of Issues**

Generally,  the issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact by the ALJ are supported by substantial evidence on the record as a whole.  Here, Plaintiff asserts the ALJ failed to fully and fairly develop the record because the ALJ did not ask Plaintiff

probing questions about completion of the record and made no effort to develop the evidence.

## Standard for Determining Disability

A claimant under the age of eighteen is considered disabled and eligible for SSI under the Social Security Act if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner is required to undergo a three-step sequential evaluation process when determining whether a child is entitled to SSI benefits. First, the Commissioner must determine whether the child is engaged in substantial gainful activity. If not, the Commissioner must then determine whether the child's impairment, or combination of impairments, is severe. Finally, if the child's impairment is severe, the Commissioner must determine whether such impairment meets, medically equals or functionally equals the severity of an impairment listed in Appendix 1 of Subpart P of Part 404 of the Regulations. 20 C.F.R. § 416.924(a); *Garrett ex rel. Moore v. Barnhart,* 366 F.3d 643, 647 (8th Cir.2004). If the impairment(s) meets or medically equals a Listing, the child is disabled. *Garrett,* 366 F.3d at 647. If a child's impairment does not meet or medically equal a listed

impairment, the Commissioner will assess all functional limitations caused by the child's impairment to determine whether the impairment functionally equals the listings. 20 C.F.R. § 416.926a. To functionally equal a listed impairment, the child's condition must result in an "extreme" limitation of functioning in one broad area of functioning, or "marked" limitations of functioning in two broad areas of functioning. 20 C.F.R. § 416.926a(a). If this analysis shows the child not to have an impairment which is functionally equal in severity to a listed impairment, the ALJ must find the child not disabled. *Oberts o/b/o Oberts v. Halter,* 134 F.Supp.2d 1074, 1082 (E.D.Mo.2001).

**ALJ Decision**

The ALJ here utilized the three-step analysis as required in these cases. The ALJ determined at Step One that Plaintiff had not engaged in substantial gainful activity. The ALJ found at Step Two that Plaintiff had the severe impairment of ADHD.

At Step Three, the ALJ found that Plaintiff's impairment did not meet, medically equal, or functionally equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. An impairment functionally equals a listed impairment if the child has "marked" limitations[2] in two domains of

---

[2] A "marked" limitation "seriously" interferes with a claimant's ability independently to initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2).

functioning or an "extreme" limitation[3] in one domain. 20 C.F.R. § 416.926(a). The six domains are: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for yourself; and health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(iv). When evaluating the ability to function in each domain, the ALJ considers information that will help answer the following questions "about whether your impairment(s) affect your functioning and whether your activities are typical of other children your age who do not have impairments: (i) What activities are you able to perform; (ii) What activities are you not able to perform; (iii) Which of your activities are limited or restricted compared to other children your age who do not have impairments; (iv) Where do you have difficulty with your activities – at home, in childcare, at school, or in the community; (v) Do you have difficulty independently initiating, sustaining, or completing activities; (vi)What kind of help do you need to do your activities, how much help do you need, and how often do you need it." 20 C.F.R. § 416.926a(b)(2). The ALJ found that the record evidence did not support a finding that E.K.W. had an extreme limitation in one domain of functioning or marked limitations in two of the domains. Specifically, the ALJ found that E.K.W. had no limitations in acquiring and using

---

[3] An "extreme" limitation "very seriously" interferes with a claimant's ability independently to initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3).

information, moving about and manipulating objects, caring for himself, and health and physical well-being; the ALJ also found that E.K.W. had less than marked limitations in attending and completing tasks and interacting and relating with others.

## Judicial Review Standard

The Court's role in reviewing the Commissioner's decision is to determine whether the decision "'complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir.2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir.2008)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

Courts should disturb the administrative decision only if it falls outside the available "zone of choice" of conclusions that a reasonable fact finder could have reached. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir.2006). The Eighth

Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

**Discussion**

Plaintiff argues that the ALJ did not fulfill his obligation to develop a full and fair record. She cites Eleventh Circuit holdings for her contention that when a claimant waives their right to counsel, "the hearing examiner's obligation to develop a full and fair record rises to a special duty." *Brown v. Shalala*, 44 F.3d 931, 934–35 (11th Cir. 1995) (quoting *Smith v. Schweiker*, 677 F.2d 826, 829) (internal quotation marks omitted). According to those cases, "[t]his special duty requires, essentially, a record which shows that the claimant was not prejudiced by lack of counsel. In carrying out this duty, the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Id*. (internal quotation marks omitted).

Plaintiff contends that the ALJ violated E.K.W.'s due process rights because he did not ask probing questions at the hearing and made no effort to develop the record between February 25, 2016 and February 13, 2018, the date of the decision. Plaintiff argues that the ALJ should have requested school records for all times relevant to the claim to determine E.K.W.'s grades, attendance, and disciplinary history. She also contends that the ALJ should have asked where E.K.W. was

treated, if and where he attended counseling or therapy, whether he was screened or qualified for the Special Education program after January 4, 2016, who prescribed his medication, and the name of the doctor to whom Plaintiff was taking E.K.W. the day after the hearing.

Although "the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case," *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004), "this duty is not never-ending and an ALJ is not required to disprove every possible impairment." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). "Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). "Past this point, 'an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.'" *Id.* (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). "[T]he ALJ is not required to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010) (quoting *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005) (quotation omitted)).

Here, the evidence in the record provides a sufficient basis for the ALJ's decision. In determining that E.K.W. had no limitation in acquiring and using

information, the ALJ relied on the treating physician's notes that E.K.W. performed at grade level, E.K.W.'s unremarkable progress reports from second grade and lack of IEP or special education services as of January 2016, and Dr. Skolnick's finding of no limitation. Plaintiff argues that the ALJ should have asked Plaintiff or E.K.W. whether he had since been reassessed for special education and should have requested complete educational records. However, there was nothing in E.K.W.'s records or the hearing testimony to indicate a limitation in acquiring and using information, thus the record sufficiently supported the ALJ's finding no limitations in that domain.

In determining that E.K.W. had less than marked limitation in attending and completing tasks, the ALJ considered E.K.W.'s teachers' reports from 2016 and 2017 that E.K.W. had difficulty staying focused. The ALJ also noted that Plaintiff testified at the later hearing that increasing the dosage of E.K.W.'s medication had improved his behavior and his ability to stay focused. In addition, E.K.W. testified that his medication helped him pay attention and stay focused. "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (citing *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)). The information in the record was sufficient to support the finding of a less than marked limitation in the domain of attending and completing tasks.

In determining that E.K.W. had less than marked limitation in interacting and relating with others, the ALJ considered Plaintiff's 2015 report to E.K.W.'s physician that E.K.W. would fight with his cousins and was becoming more aggressive with teachers, as well as her statements in the May 2016 Disability Appeal that E.K.W. hit his teacher and other children and was very aggressive. The ALJ noted that Plaintiff's hearing testimony was that E.K.W.'s behavior had improved with medication. The record includes no other evidence of issues with communication or forming emotional connections with others; to the contrary, E.K.W. testified that he had friends at school and was able to communicate with the ALJ. The ALJ had sufficient evidence to determine that EKW had less than marked limitation in interacting and relating with others.

In determining that E.K.W. had no limitation in moving about and manipulating objects, the ALJ noted that no evidence in the record indicated that E.K.W. had limitations in these areas. Indeed, neither Plaintiff, nor E.K.W., nor his teachers nor treating physicians ever noted anything to suggest limitation in moving about or manipulating objects; this finding is therefore supported by sufficient evidence.

In determining that E.K.W. had no limitation in caring for himself, the ALJ relied on the statement of E.K.W.'s teacher that when on medication, E.K.W. was able to calm himself down. The ALJ also relied on Dr. Skolnick's assessment of

no limitation in this domain. E.K.W.'s treating physicians also noted that his behavior was age appropriate at exams, and Plaintiff made no mention of any issues with E.K.W. being able to care for himself. The ALJ's finding is supported by sufficient evidence.

In determining that E.K.W. had no limitation in health and physical well-being, the ALJ noted that no evidence in the record indicated that E.K.W. had limitations in these areas. Nothing in the record indicates any cumulative physical effects of E.K.W.'s ADHD. The ALJ's finding is therefore supported by sufficient evidence.

In this case, the medical records clearly gave the ALJ sufficient medical evidence to determine that E.K.W. is not disabled. E.K.W.'s reported behaviors do not give rise to or constitute marked or severe functional limitations, and his condition was managed with medication.

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. *Perkins v. Astrue,* 648 F.3d 892, 900 (8th Cir.2011); *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001). The ALJ's clear and specific opinion is supported by substantial evidence in the record, and therefore is affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is **Affirmed**.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 4th day of November, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE